So let's begin with counsel in Burstein v. Long. Good afternoon, Your Honors. I'm Max Falkenflett, counsel for the appellant, Dr. Raymond A. Long. This case is an appeal from the Rule 12 dismissal of counterclaims arising out of a May 2013 written retainer agreement between Dr. Long, the appellant, and his former attorneys. It is alleged that the former attorneys, the Burstein firm and Mr. Burstein, neglected to prosecute two actions it was contractually obligated to pursue. And the fact of neglect is not arguable, although the district court did take a position on the consequence of that neglect as to one of the cases. The first of the cases is a case we refer to in the papers as the Parry action. The retainer agreement required Dr. Long to pay $300,000 in a nonrefundable flat fee payment, in return for which the Burstein firm obligated itself to do, quote, all work required for discovery, pretrial proceedings, trials, or appeals. That case was almost completely ignored for nearly two years. But the initial question, however, is whether the retainer agreement contains an exculpatory clause, as the district court erroneously found. The retainer agreement, in fact, contains no limitations at all on Dr. Long's right to seek damages for breach or for torts, and no limitation at all on the amount of damage he can seek. You don't think these are consequential damages? Certainly they are not consequential damages. The cover damages we're talking about. The cover damages we're talking about, they are not consequential. And I cite in my opening brief at pages 25, 26, the reply brief at 6 and 7, the cases that make it clear that the benefit of the bargain damages are not consequential. In addition, I'd like to add a case I didn't cite in my brief, Tractable Energy Marketing v. AEP Power Marketing at 487 Fed 3rd 89, and particularly 109 Note 20, where this Court held that for nearly 200 years it has been recognized that a party who is denied the benefit of the bargain of his contract is entitled to receive that benefit back in damages. Are there any allegations in the Third Amendment answer and counterclaim -- counterclaims that the parties discussed this, that there was some indication that this was somehow different, that, hey, look, if there's a breach here, we're going to be responsible for cover damages as well? Is there any allegation to that fact? Yes, Your Honor. The district court said there was not, but paragraph 96 of the Third Amendment complaint specifically states that the parties understood that if the bursting firm failed or refused to perform all of the work it agreed to perform, quote, Dr. Long would be damaged in an amount that was required to pay another attorney to perform such work. But is there anything to say, and that understanding is based on there was an e-mail between us that said, look, you know, these damages are going to include a cost of getting a substitute counsel and doing all these other things, anything like any writing or any kind of memory? Well, Your Honor, the allegations of the pleading make it very clear that there was a discussion that the most Dr. Long would have to pay for all the work required for discovery, pretrial proceedings, trial or appeals is $300,000, and, in fact, paragraph --- But that's not what at stake here is what he's going to get, right? Pardon me? That's what it's going to get. No, it's both, that he'd never have to pay more to get that. And, in fact, that paragraph B-4 makes it absolutely clear that Dr. Long was capping his liability. I mean, this is a very unusual- Wasn't it clear that he was paying more than that? He had a local counsel. That lawyer was being paid by Burstein or being paid by Dr. Long? Well, Dr. Long paid the local counsel, so he was paying something. There is a question, which we will address as the case moves forward, as to whether some of the work to be performed by local counsel should have been performed by the Burstein firm. But that was not an argument that we've raised as yet. Could I ask a question about the breach here? Paragraph 3 of the Retainer Agreement seems to contemplate exactly what occurred here. It says that you, Dr. Long, have an absolute right to cancel the Retainer Agreement, but then it says if you were to discharge the Burstein firm, or if the Burstein firm were to secure a court order permitting it to withdraw its representation, then a fair and reasonable fee will be determined. Now, I don't know whether I'd call that an exculpatory clause. I'm just having trouble understanding how it isn't true that you bargained for a situation in which Burstein could withdraw with permission of the court, and if the permission were granted, then certain consequences would follow. That's correct. There are consequences as to the fee. But as we point out in our brief, the plaintiff was not granted the right to withdraw the Burstein firm. But why is it a breach? You see, why is it a breach for Burstein to ask to withdraw and be allowed to withdraw by the court?  to withdraw. And I believe that objection was made. And, Your Honor, the fact of the matter is that he had a right to withdraw, but not on pretextual grounds. And the court did not rule on the grounds for withdrawal, other than to say that the relationship between the client and the attorneys had broken down. But you argued that he shouldn't have been allowed to withdraw. Well, not me, but yes. Well, yes, you collectively, not Wong, argued that he should not have been allowed to withdraw, essentially on this ground of pretext. Yes, and, Your Honor, but pretextual or not, pretextual or not, the court found it was clear that the relationship had broken down. So if my attorney is the client's attorney is lying about the grounds and why he wants to withdraw, and we have plenty of allegations that prove that are more than plausible under the standards applied by this Court numerous times, which I need not discuss with the Court, more than plausible that it was pretextual. If the attorney does go to that length to try and get out of the case, it is – I – were I counsel for Dr. Wong at that time, I would have said you can't oppose the withdrawal because you don't want him as your attorney. The relationship has broken down. Now, the fact that he raised that issue did not undermine the fact that the relationship broke down, and that was the only ground on which, the only ground on which, the So it doesn't really speak to the issue of breach or damage. And you're saying the breach would be a breach of the duty of fair dealing or something because he is allowed to ask to withdraw, but not on pretextual grounds. That would be bad faith. Well, that's right. And or a breach of fiduciary duty. That's a breach of fiduciary duty on the pretextual grounds, but on the issue of withdrawal and the fee, irrespective of whether or not the withdrawal was allowed, the contract doesn't limit damage. Wait. You're saying that if there's not a sufficient allegation of pretext, that even if there was a good reason to withdraw and the court granted withdrawal, that would still constitute a breach that entitles Dr. Wong to be reimbursed for all his subsequent attorney's fees? If Dr. Wong made a bargain to be entitled to get all of the services required through appeal and didn't get that. And if he didn't get it because he was asking the lawyer to do something unethical and the lawyer asked him to withdraw. If that were the case, I agree that would be different. If that were the case. Now, that's emphatically not true. Mr. Bernstein never surrendered the documents that he claimed he was trying to surrender. We have e-mails proving that the parties negotiated this and that every single ground on which he objected to withdrawal, Dr. Wong agreed with. The only sticking point was that Bernstein said he needed two months to do further discovery, even though he had been in the case for two years and established a discovery schedule himself, which he was not prepared to live up to. So that for all of those grounds, it is absolutely clear, and we have it all in e-mails. It's not just supposition, Judge Droney. We have it in not just discussions. We have in e-mails that Dr. Wong agreed to meet every objection Mr. Bernstein raised except to delay the case another period of time after a two-year delay already. Now, there are just a couple of other points. I see I'm out of time, but if the Court will indulge me for a moment. The issue of whether damages from the settlement, proposed settlement, would be speculative and there are numerous cases that show that damages from a suboptimal settlement or no settlement at all is actionable. The question is, did we create a plausible, did the allegations create a plausible basis for asserting that a settlement could have been reached here, and we in fact did show that there was no interrogatories, no demand for production, no initial disclosures for two years, a strong case for settlement. Bernstein himself admitted there was real money in this case. That's a quote, and that comes out of the case. Why was summary judgment granted, then? Summary judgment in the Parry action? Because the record before the Court then, which Your Honor reviewed in the prior proceeding, on summary judgment didn't negate the fact that the $4 million settlement that Parry received was enough. Now, and in fact, at oral argument, I don't know if Your Honor recalls, but I recall quite clearly that Judge Rauji said there was some evidence in that record which was inadequate and not something I was involved in, that there might be $6 million of damages if it were properly pursued, and Judge Rauji said $4 million to $6 million isn't that big a difference. So the question was, was it likely that the triad partners' parties would have paid more than $4 million? Here, the question is entirely different. The question is, would Lloyd George Parry and his carriers have paid more than zero had they been approached to settle this case? They paid nothing, and summary judgment was granted. Now, if he had better representation, the result might have been different, but that's more complicated. Thank you. You've reserved time, and I've given you extra time. Thank you, Your Honor. Mr. Shearer. May it please the Court. Brett Shearer from Calvin, Dulwich & Volokh on behalf of the appellees. With respect to the issue of cover damages, I just want to correct one thing. Counsel indicated that the fee was a nonrefundable fee. If anything, it was not a refundable fee, a nonnonrefundable fee. As made clear, as Your Honor indicated in reading the provision of the clause, what the district court referred to as the exculpatory clause, it was very clear that if the fee was not earned, it would be determined as a fair and reasonable value. So, therefore, it is not a nonrefundable fee. With respect to the argument that these – sorry, that appellant concedes in their reply brief is essentially an unprecedented argument, that a lawyer who withdraws who has a contingency fee or a flat fee becomes a litigation funder if they withdraw from the action, plaintiff's concession that it was unprecedented establishes exactly why this was not something that was reasonably foreseeable and it was not something within the contemplation of the parties. If Dr. Long had wanted such a provision, he should have put it in there. If he really was insistent that he was going to be funded for life no matter what happened in that case, he needed to put that in. The agreement is very clear. As Your Honor pointed out, it begins the paragraph by saying you have the absolute right to cancel. And then it goes into what the ramifications are if Dr. Long cancels or if exactly what happened here, the Burstein firm obtains an order that says you are allowed to withdraw from the case. And this wasn't a pro forma order that was obtained in State court. This was a Federal court judge who heard a motion to withdraw and decided that it was appropriate for the Burstein firm to withdraw from the case. With respect to the legal malpractice in the Parry action, plaintiff's appellant's claim is essentially a highly speculative claim. Breyer. Can I just back up before you move on to that? Your adversary says, but it can't be the case that if the withdrawal was sought in bad faith, that this provision contemplated that simply because the district court granted what by that point was virtually uncontested, that whoever's fault it was, the relationship had broken down, that if it was in fact Mr. Burstein's fault or his neglect or his pretextual wanting to just get out of the agreement, that that would somehow be okay, that this provision would apply? Well, that goes to the heart of the argument in our brief with respect to the relief being sought by Dr. Long is so draconian. The courts in New York have ruled on this issue and have said that when you withdraw from an action without good cause, which is what counsel is referring to, the relief that you are entitled to as the client is a refund of the fee. The draconian provision is, is that if you withdraw without good cause, you forfeit your fee. And in this case, we have made it very clear, the argument that we raised and what was being decided by the district court was, had nothing to do with the $300,000 and whether Dr. Long was entitled to a refund on it. This was the cover damages aspect. So, again, this goes to the unprecedented relief being sought because it is no court and plaintiff cannot point to one. The only courts that we have seen that have adjudicated in New York have specifically said that the relief that you are entitled to is that you make the attorney forfeit their fee if you can show that there was no good cause for the withdrawal. With respect to the Parry malpractice action, here the appellant relied on a claim that there was this delay in proceeding in the case. And the delay was caused, and I think you have, you know, the probably one of the most gracious decisions, which is to Judge Sessions, the underlying district court judge, who talks about the delay and essentially gives a mea culpa, which he did not need to do, and said, look, I understand why there was some confusion as to why this case sat around for a year. Let's get going on it, set out a new discovery schedule, and the case proceeded ahead. So to the extent that plaintiff relies on this delay as being the cause of the settlement, moreover, the settlement was obtained that the settlement that Parry obtained for Dr. Long in the underlying case was upheld, as you know, as being adequate. The magic bullet that appellant refers to throughout the brief as the Jarvis report, that that was somehow going to miraculously change the outcome, has proven to be nothing that is anything of a magic bullet. And more importantly, the speculation that simply because Mr. Parry, as an attorney, had insurance, that that somehow opened the door, that he was willing to settle the case, is just rank speculation at this point in time. So the Parry action was ultimately dismissed on summary judgment, right? That is correct. And how do we know that Burstein's bad work, if there was any, I'm not saying there was, didn't contribute to the grant of summary judgment in that case? Your Honor, the Burstein firm was removed from the case by court order in July of 2015. Discovery proceeded for several months after that. Motion for summary judgment was then filed with counsel representing Dr. Long, as Judge Chesson said in the report. The local counsel. The local counsel, Mr. Ogden. And, you know, to the extent, one, that plaintiff is making this argument that the case had been settled, that was on Mr. Ogden. He was the attorney of record. At any point in time, if there was supposedly this burning desire by Mr. Parry to settle his case, why was there no communication? Why was there no offer to settlement? Because there was no offer. Mr. Parry was ready to litigate his case. And it just, again, it goes back to the speculative aspect of the case, is that, and that's why you have the line of cases in New York that specifically deal with the issue of when successor counsel has an opportunity. So in this case, if the argument is that the malpractice was based upon the firm's failure to get something in Discovery. And, again, the only thing that we've ever heard of this magic bullet is the driver's report, and that didn't change the outcome of the case. But to the extent that the Parry, sorry, that the Burstein firm made some type of error was negligent in their handling of the case when they had it, that negligence can no longer serve. The proximate causation chain is cut off at the time when the successor counsel and plaintiff have the ability to take the case and continue going on with it, which they did. If the Court has no further questions, thank you. Thank you. Thank you for generously allowing me the same time in reserve. Let me try and address the issues that the Court has raised and that my counsel and my friend has raised. First of all, counsel is not counsel, as this Court is well aware. Mr. Ogden, who according to the allegations was demeaned by Mr. Burstein as incompetent, was not Judd Burstein, who is well known, brags on his website that he is able to get great settlements because people know that he's willing to go to court and go to trial, and in this case gave the opinion that there was real money in the case. Now, the fact of the matter is there was a very short period of time between the withdrawal by Mr. Burstein and the commencement of the summary judgment motion being litigated. It was a new discovery schedule. The Court said, okay, it's been delayed, but now we're going to start over. You have an opportunity for full discovery.  In this case, it was precluded. There was a motion for summary judgment made. Counsel, I think unwisely, because of his personal opinion or his unwise decision, chose not to make a motion to delay the summary judgment motion for further discovery. There was almost no chance for discovery. Breyer, we're going to have a malpractice action against Ogden? No. We're not adequately pursuing a remedy with regard to the malpractice by Burstein, who was supposed to be pursuing a malpractice action against Perry, all on the theory that there could have been this settlement. And, Your Honor, that is a very, very different situation. Here, there could have been a settlement in two years. And I would say, Your Honor, if you ask me... And what exactly is the evidence that there was a settlement on the table before discovery took place? The evidence that there was a settlement on the table is the allegation that Perry said he was willing to consider settling within the limits of his policy. The evidence on the table is the fact that Perry was facing, if truly analyzed, which hadn't been done, $20 million of liability, potentially, as well as punitive damages. And so there was huge potential liability. The evidence on the table was that there was a strong suit. There was some criticism of the impact of the Jarvis report, which in the triad action may not have affected the judgment of the triad defendants to settle, because in that action, those defendants may have known all the information that Dr. Jarvis uncovered, but Perry didn't. And so the evidence on the table is that there was a willingness to settle, that there was... That was expressed, that specifically pleaded. There was substantial ground to settle. And there was an opinion by Mr. Burstein that there is real money in the case. Now, if you put that all together and compare that to the plausibility standard just reiterated by the Court recently in the Palin case, you know, it doesn't have to be the most compelling evidence. It just has to be more than purely speculative, and it truly is here. The cases on plausibility say time after time you need concrete facts that show that the recovery was plausible. And I might add just one thing on the Keetam allegation, if I can just transfer to that for a moment. Where the district court found no evidence of scienter, we cited a whole bunch of evidence, as well as the law, that the district court misunderstood, because the reality is that the Foreign — that the False Claims Act does not require knowing falsity, expressly does not require that. It only requires deliberate disregard or reckless disregard of true facts. And we established deliberate disregard and reckless disregard through dozens of allegations in the complaint. And my friend, Mr. Scherr, did not challenge one of them. Instead, in his brief, I believe it was page 48, he only restates the district court's erroneous claim that knowing falsity is required. I'm not even sure if I'm required in order to make a plausible case to plead a case within the case under Rule 9b, because there's a lot of other evidence that that claim was plausible. But what we're dealing with here now, Your Honor, is the plausibility standard. And that is a very low bar, and rightfully so, because of the Seventh Amendment that requires things to go to a jury unless the parties can't prove it on summary judgment. And there was a summary judgment case before Judge Droney before on appeal. That was a whole different situation. And I pick up Judge Droney's comment that we don't know that Burstein might have had he conducted discovery, uncovered more evidence. But we don't need to get there right now. That will happen as the case moves forward, and we uncover that evidence if there is some. What we have to show right now is that we have alleged a plausible chance for a valuable settlement, which all of the cases recognize can be appropriate in the proper cases. And we have concrete allegations proving that chance of settlement was squandered. So thank you, Your Honor. We'll reserve the decision, and we are in recess.